Ramiro Garza BARREDA, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-86-350-CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 30, 1987.

Dale Robertson, Gilberto E. Rosas, Brownsville, for appellant.

Ben Euresti, Jr., Brownsville, for appellee.

Before DORSEY, UTTER and KENNEDY, JJ.

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

DORSEY, Justice.

This Court affirmed appellant's conviction on August 28, 1987. Appellant filed a motion for rehearing which was denied on October 22, 1987. Appellant timely filed his petition for discretionary review on November 23, 1987. Tex.R.App. 90, 202.

The rules of appellate procedure allow this Court to summarily reconsider and correct or modify the opinion within fifteen days after a petition has been filed. Tex.R. App.P. 101. Since our opinion was delivered, the Court of Criminal Appeals has decided that the parole and good conduct charge authorized by Tex.Code Crim.Proc. Ann. art. 37.07 (Vernon Supp.1987) violates provisions of the Texas Constitution. *Rose v. State,* 760 S.W.2d 1 (Tex.Crim.App.1987).

In light of this opinion, we have reconsidered our holding and now reverse and remand the cause to the trial court.

In *Rose,* the defendant failed to object to the inclusion of the parole and good conduct time instruction in the Court's charge. After determining that the instruction and statute mandating it were unconstitutional, a majority of the judges found the defendant's conviction did not require reversal. We understand the Court's holding to be that, although the instruction was given in error, the absence of an objection in *Rose* requires the error to be fundamental and requiring reversal only if the harm resulting was egregious, utilizing the analysis of *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1984).

An error in the jury charge must be analyzed in light of *Almanza* where it was stated:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is calculated to injure the rights of defendant which means no more than that there must be some harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.
>
> On the other hand, if no proper objection as made at trial and the accused must claim that the error was fundamental, he will obtain a reversal only if the error is so egregious and created such harm that he has not had a fair and impartial trial—in short egregious harm.
>
> In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza,* 686 S.W.2d at 171.

In the present case, timely and proper objection was made, thus we apply *Almanza* to determine if the improper charge was harmless.

Since the error concerns only the punishment phase of trial, the error must be harmless as to punishment. In determining harm, we look to the nature of the offense, the possible punishment and that actually assessed, the state of the evidence, the entire jury charge, the arguments of counsel, and any other relevant factor.

The charge sets forth the applicable range of punishment for the offense, instructs the jury about appellant's probation eligibility, and finally includes the parole and good conduct time paragraphs.

The jury was also instructed not to consider the extent to which good conduct time may be awarded to or forfeited by the appellant, and not to consider the manner in which the parole law may be applied to appellant.

Appellant was convicted of sexual assault, a second degree felony, for which the punishment range is for any term of years not more than twenty nor less than two, and a fine not to exceed $10,000.00. The jury assessed punishment of confinement for nine years in the Texas Department of Corrections and a fine of $3,000.00.

Appellant had no prior convictions and was eligible for probation; the jury chose not to recommend it even though they assessed punishment at nine years, a term within the range where probation was a proper option. By rejecting probation, the jury apparently wished to incarcerate appellant for a period of time in excess of the minimum punishment available.

At the punishment stage of trial, the State produced five witnesses who testified that appellant's reputation for being a peaceful and law-abiding citizen was bad. Four of these witnesses were police officers, and one was a child protective specialist with the Texas Department of Human Resources. One of the police officers had formerly been director of the Brownsville Crisis Center.

Appellant's counsel argued that appellant had already served 106 days in jail, that his standing in the community had already been damaged, and that the jury should consider probation. Counsel recommended a sentence of ten years probated for ten years.

Counsel for the State argued that the victim remained affected by the traumatic experience of rape and that she "still does not live at home." The prosecutor emphasized appellant's bad reputation and recommended the maximum punishment.

The appellant did not testify nor present any evidence at either phase of the trial.

The victim had cerebral palsy and was confined to a wheel chair. She and appellant met in July or August 1985, as a result of mutual religious activities. Thereafter, they met socially, went out together, and appellant began spending nights at her residence. At some point, appellant began performing various sexual acts on her although she did not want him to do so. They had not engaged in sexual intercourse until the assault on October 5.

According to the victim, she decided to end the relationship about a week before the sexual assault but was afraid of appellant's reaction. She testified that he wanted to marry and he had told her that he would not stop short of sexual intercourse if he believed she was not to be his wife. Before she terminated the relationship, she spoke to a church member about her concern. On the day of the assault, she went to appellant's place of employment and got her apartment key back. They discussed the situation and appellant asked to continue the discussion later that day after work.

On that afternoon, the victim telephoned a fellow church member to speak to appellant on her behalf. That member did, and appellant agreed not to see the victim that day.

Around 10:00 p.m., appellant came to her apartment. There, appellant undressed and raped her. After the assault, the victim telephoned the same church member and his wife. They found the victim hysterical and incoherent.

She was then taken to a hospital and examined. A vaginal swab showed the presence of semen.

The next day, appellant telephoned the above church member. He admitted that

he had hurt the victim and had raped her. He admitted that they had not had sexual intercourse before the night of the rape.

After reviewing the evidence, we cannot conclude that the erroneous jury instruction was harmless error. Appellant received a punishment roughly in the middle of the range authorized for this offense. Under these circumstances, we conclude that there is a reasonable possibility that the erroneous instruction contributed to the punishment assessed. *Graham v. State,* 710 S.W.2d 588 (Tex.Crim.App.1986).

Accordingly, the judgment of the trial court is REVERSED and the cause is RE-MANDED to the trial court for trial on the issue of punishment only in accord with Tex Code Crim.Proc. art. 44.29(b). *See Ex parte Klasing,* No. 69,703 (Tex.Crim.App. October 21, 1987).