**Reginald Keith JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–86–00431–CR to
05–86–00433–CR.**

Court of Appeals of Texas,
Dallas.

Feb. 10, 1989.

Rehearing Denied March 21, 1989.

Discretionary Review Refused
June 7, 1989.

Davey O. Lamb, Dallas, for appellant.

Michael A. Klein, Dallas, for appellee.

Before McCLUNG, THOMAS and
OVARD, JJ.

McCLUNG, Justice.

On this remand, the sole remaining issue to be determined is whether the trial court's submission of the unconstitutional good time and parole instructions to the jury contributed to the punishment the jury assessed the appellant. We are unable to determine that the submission of the instructions was harmless beyond a reasonable doubt. We reverse the trial court's judgment and remand the cause for a new trial.

Appellant was originally convicted of aggravated assault, attempted murder and murder and assessed a sentence of ten years, twenty years and life respectively. On his appeal to this Court, he contended that the trial court erred in submitting good time and parole instructions to the jury on the grounds that the charge was predicated upon an unconstitutional statute. In an unpublished opinion, we rejected his challenge to the constitutionality of article 37.07, section 4, of the Texas Code of Criminal Procedure. *Johnson v. State,* No. 05–86–00431–CR, 05–86–00432–CR, 05–86–00433–CR (Tex.App.—Dallas, Feb. 4, 1987).

In his petition for discretionary review, appellant asserted numerous grounds of review, one of which was the constitutionality of article 37.07, section 4 of the Texas Code of Criminal Procedure. The Court of Criminal Appeals granted his petition on the constitutional issue only and agreed with his contention that the statute in question is unconstitutional. The court based this conclusion on its prior decision in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App. 1988). That court remanded this cause to this Court to conduct a harml analysis under rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See Rose,* 752 S.W. 2d at 554; *Haynie v. State,* 751 S.W.2d 878, 879 (Tex.Crim.App.1988).

Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides the general harml analysis test to be applied by appellate courts in criminal cases and states: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." TEX.R. APP.P. 81(b)(2). This standard requires a review of the entire record.

Appellant was convicted of aggravated assault, attempted murder, and murder. The charge was not enhanced by a prior conviction; thus, the range of punishment was two to ten years for aggravated assault, two to twenty years for attempted murder, and five years minimum to a maximum of life or ninety-nine years with the possibility of a fine up to $10,000 for murder. The jury assessed ten years for aggravated assault, twenty years for attempted murder, and a life sentence for murder, with no fine on any sentence.

The voir dire of the prospective jurors was transcribed, and several jurors were questioned extensively by appellant's attorney regarding the parole laws and good time credit. Although some jurors were challenged by appellant's attorney because of their responses to questions on this subject, the challenges were denied without objection. The record is silent as to whether any such challenged juror was actually seated on the jury panel. The evidence during the guilt/innocence phase of the trial reflected that appellant was seen walking around the apartment complex where the shooting occurred carrying a shotgun, some several hours before this incident. About ten p.m. that day, he was in the apartment of his older brother, angry, claiming that someone was shooting at him, and that he was shooting back. He left the apartment and as he went down the stairs, carrying the shotgun, he confronted one of the victims who was using a pay-phone. The victim asked appellant "What's up?" but got no response and so he turned his back and continued talking. He heard a "click" and turned just as appellant shot him in the chest, stomach and arm. This victim dropped the phone and ran away screaming he had been hit. Appellant's brother, hearing the shot came out in time to see this victim run by with appellant in pursuit, reloading the shotgun. Accompanied by his brother Appellant pursued the first victim but apparently lost him. A car approached on the street and appellant fired at the car, apparently missed, and the car continued on without stopping. During the pursuit of the first victim, appellant ran past a pickup parked at the curb, occupied by three hispanic men. Curious, the three men got out of the pickup to see what the shots and chase were about. Seeing nothing they began to re-enter the vehicle. Two persons were inside and the third was near the other door when appellant and his brother came back. The appellant then approached the parked pickup, asking "What are you doing here?". One of the men replied "We live here." Appellant's brother attempted to stop appellant but appellant ordered him to "get out of my way", raised the shotgun and shot the one person outside the vehicle from close range in the face and neck, killing him. One of the men got out to see about his friend and was also shot by appellant. Retreating to the pickup, the third victim began to flee by starting the pickup and the appellant shot out the back window as the vehicle pulled away. The appellant and all the victims were total strangers and had never seen each other prior to this event. None of the victims were armed and there was no provocation or justification for the shooting.

During the punishment phase of the trial, the trial court charged the jury on a deadly weapon finding in addition to the statutory good time and parole charges mandated by article 37.07 of the Texas Code of Criminal Procedure. No objection to the charge was made. No additional mitigating charge on good time and parole was requested or submitted to the jury. *See Rose*, 752 S.W.2d at 554.

During jury argument at the close of the punishment phase, the State waived opening argument. Defense counsel spent a

considerable amount of time on this subject discussed the parole instructions in the charge and ask the jury for a sentence of no more than the minimum sentence so as to give hope to the appellant for an early release under the parole law and good time credit. The State argued the facts of the offense itself, and requested a maximum sentence on all convictions, explaining they would run concurrently and that only a life sentence would give the jury any assurance the appellant would be detained in prison for any length of time.

During closing argument in the punishment phase, the State made the following argument:

> There has been no evidence on the stand that he is going to be rehabilitated, in fact, down at the Texas Department of Corrections. What this tells you about is a bunch of silliness that goes on down there about good time. When five years comes up and they think he's got some good time, they're going to pop him back out.

The defendant's prompt and timely objection to this statement was overruled by the court.

The jury found appellant used a deadly weapon, and assessed the maximum sentence on each case, including that of life for murder.

Although the killing was cold-blooded, and the appellant's ferocious conduct continued unabated involving several innocent victims, under the totality of the circumstances of the conduct of this trial, we are unable to determine beyond a reasonable doubt that the error made no contribution to appellant's punishment. We reverse and remand the cause for a new trial pursuant to article 44.29 of the Texas Code of Criminal Procedure. *See Ex parte Klasing,* 738 S.W.2d 648, 650–51 (Tex.Crim.App.1987); *Kingsley v. State,* 744 S.W.2d 191, 196 (Tex.App.—Dallas 1987, no pet.).