Kenneth Cy **HARDING**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 378–89.

Court of Criminal Appeals of Texas, En Banc.

June 6, 1990.

Douglas M. O'Brien (court appointed on appeal), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson and Pat Kelley, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

This is a *"Rose* harm" case. See *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987–1988), and *Arnold et al. v. State,* 786 S.W.2d 295, 315 (Tex.Cr.App.1990). The offense is aggravated robbery; enhanced by a prior conviction, the punishment is sixty years confinement. *Harding v. State,* 1989 WL 6965 (Tex.App.—Houston [1st] No. 01–86–00686–CR, delivered February 2, 1989).

### I

The indictment alleged and the proof showed that on a June afternoon in 1985 appellant entered a place of business, confronted a secretary/receptionist, exhibited a firearm and took her money. Appellant then turned to an elderly gentleman seated in the office and robbed him of money. When appellant saw another man walking in the hallway, he approached that man and pointedly displaying the firearm obtained money from him.

At punishment the State proved up its Exhibit 2, a pen packet reflecting a December 1983 conviction for forgery, punishment at three years confinement; five witnesses testified that his reputation for being peaceful and law abiding is bad. Appellant did not present any evidence.

Appellant objected to the § 4(a) instruction on grounds, *inter alia,* "that it allows the judiciary to interfere with a function, namely the parole that is an exercise in the powers of the executive branch of the government;" he specifically pointed to the portion that "tells the jury that under the law applicable in this case the effect of a sentence of imprisonment that he will not become eligible for parole until a certain time, until he has served one-third or 20 years." IV SF 35–36.[1] The charge did not

contain a *Rose* "curative instruction." See *Rose v. State,* supra, at 554.

The prosecutor opened argument with brief remarks, primarily urging the jury to request State's Exhibit 2 and "to take your time examining it;" he stated the consequential range of punishment and challenged defense counsel to explain why appellant "deserve[s] less than life."

In his turn, counsel for appellant first declared he was not going to answer "that ridiculous question," because "the facts of this case don't deserve a life punishment, that is for sure." He then addressed objectives of punishment, discussed the range of punishment, stressing that the legislature intended consideration of the minimum, questioned sufficiency of proof of enhancement, reprised circumstances of the offense to emphasize no victim was harmed and concluded by suggesting the minimum of fifteen years is punishment enough.

In closing the prosecutor again called on the jury to get and examine the pen packet for what it would show—penitentiary life "didn't discourage [appellant] from getting a gun [and robbing total strangers] at gunpoint," he cannot be rehabilitated in that from forgery he "moves onwards to take up better things, to armed robbery." Turning to a plea to protect society, the prosecutor urged the jury:

"... How are we going to protect society against that man? Read the charge, *including the parole charge the Judge has given you.* Read it all, and then say to yourself how are we going to protect society[.] * * *

If you can justify that giving society less than the maximum protection that you can give them, but I urge you to look at the punishment phase of the testimony as to what evidence was presented. The fact that he is an ex-convict, the fact that five people have come in and testified he has a bad reputation in the community, why does society deserve less than the

---

1. On original submission appellant renewed his challenge to constitutionality of the § 4(a) instruction, which the court of appeals summarily rejected: "We have frequently held that article 37.07, § 4 is not unconstitutional. We have found no authority that would justify the chang-
ing of those holdings. [citation omitted]." *Harding v. State,* 1987 WL 16423 (Tex.App.—Houston [1st] No. 01–86–00686–CR, delivered August 31, 1987), PDR granted and cause remanded, 761 S.W.2d 20 (Tex.Cr.App.1988).

maximum sentence? And again read the entire charge, *including the parole laws.*"

IV SF 52–53 (emphasis supplied here and throughout). Concluding with an abbreviated "they" argument, the prosecutor asked for a life sentence.

At 4:10 p.m. the jury retired; at 4:12 p.m. the jury requested State's Exhibit 2. At 5:20 p.m. the jury returned a verdict assessing confinement for sixty years.

## II

The court of appeals conducted an analysis under Tex.R.App.Pro. Rule 81(b)(2), along the lines of *Rose,* supra, at 554, *viz:*

"... As this case was tried before the *Rose* decision, the trial court read the parole charge to the jury, as mandated by art. 37.07. The court included the *curative instruction* in its charge, and there were *no* references made to parole in closing arguments. A rebuttable presumption applies that a jury follows the instructions given by a trial judge. [citations omitted].

In addition to this *curative instruction,* the jury had the aggravated facts of this case to consider, a prior felony conviction, and the testimony of five reputation witnesses in assessing punishment. The appellant faced a minimum sentence of 15 years and a maximum of life. [citation omitted]. The prosecutor asked the jury to assess life. The appellant asked for 15 years. However, the jury assessed his punishment at 60 years."

Considering those factors the Houston [1st] Court concluded the § 4(a) instruction made no contribution to punishment. Slip opinion at 2–3.

Because a *Rose* "curative instruction" was not given and the court of appeals regarded a part of § 4 itself as "the curative instruction," and also believed there was no reference to parole in argument, faced with a variety of treatments of "*Rose* harm" we granted review to determine whether its conclusion is correct. We find under *Arnold v. State,* supra, the analysis faulty, and therefore reverse.

■ First, we have determined that under Rule 81(b)(2) there is no "rebuttable presumption" to apply. *Arnold,* at 387–388.

■ Second, "no part of a § 4 instruction can reasonably be characterized and fairly regarded as 'curative,'" *Arnold,* n. 23 and accompanying text at 310–311.

■ Third, the prosecutor did indeed direct the jury to consider the § 4(a) instruction—not once but twice—to decide "how are we going to protect society against that man." See *ante,* at 639. "[An argument] made in terms tending to induce consideration of the eligibility formula and other teachings of a § 4 instruction compounds *Rose* error and may influence the jury in its deliberations on punishment." *Arnold,* at 302. Certainly such was his stated purpose and that "alone or coupled with other indicia in the record" can create implications of harm. *Id.,* at 304.

■ Another indicator is the term of years assessed: "it serves somewhat as a barometric measure of other pressures ... likely to influence the jury in assessing punishment." *Arnold,* at 305, 307. The Houston [1st] Court itself has made the point that even without an explanation from counsel jurors are capable of calculating effect of what it calls the "one-third rule" and then "fixing a term of years to compensate for parole eligibility." *Id.,* at 306, n. 14. Experience proves the point has merit. *Id.* at 306, 312, n. 24.

However, in this cause the court seems to take the view that a term of sixty years is "mid-range" punishment, thus somehow suggesting harmless error. The fact of the matter is that under § 4(a) sixty years is the minimum term that must be assessed in order to achieve the maximum delay in parole eligibility. *Diaz v. State,* 742 S.W.2d 851, at 855 (Tex.App.—Austin 1987) no PDR. So, as we demonstrated in *Arnold,* "it is not enough to say that a § 4 instruction made no contribution to punishment *merely because the term assessed is* 'mid-range' relative to the potential maximum." *Id.,* at 306. The burden is on the

State to show beyond reasonable doubt that it did not. *Id.,* at 298.

"The evil to be avoided is the consideration by the jury of parole in assessing punishment." *Rose,* supra, at 535, quoting *Clark v. State,* 643 S.W.2d 723, at 725 (Tex.Cr.App.1982). We conclude that a rational appellate court could not determine and declare beyond a reasonable doubt that the error in allowing jurors to consider aspects of parole law stated in the § 4(a) instruction did not influence the jury adversely to appellant in assessing punishment, *Arnold,* at 300, that it made no contribution to punishment assessed against appellant *Id. (Hooper v. State),* at 318–320; cf. *Onomonu v. State,* 787 S.W.2d 958 (Tex.Cr.App.1990).

Accordingly, we reverse the judgment of the court of appeals as to punishment and remand the cause to the trial court pursuant to Article 44.29(b), V.A.C.C.P.

W.C. DAVIS and TEAGUE, JJ., concur in the result.

McCORMICK, P.J., and BERCHELMANN and STURNS, JJ., dissent.