

# NUMBER 13-08-00093-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **DOUGLAS MICHAEL HUBERT,** | **Appellant,** |

**v.**

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 214th District Court
### of Nueces County, Texas.

# OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Opinion on Rehearing by Chief Justice Valdez**

Upon consideration of the State's motion for rehearing, we deny the motion, withdraw our opinion of January 15, 2009 and substitute the following in its place.

After the trial court denied his motion to suppress, appellant, Douglas Michael Hubert, pleaded guilty to the offense of unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04 (Vernon Supp. 2008). In accordance with a plea bargain,

the trial court signed a judgment of conviction that sentenced Hubert to five years' imprisonment. By a single issue, which is advanced through two subissues, Hubert claims the trial court erred in denying his motion to suppress. We reverse and remand.

## I. BACKGROUND

On July 26, 2004, Hubert was convicted of a third-degree felony offense of driving while intoxicated and sentenced to seven years' imprisonment. *See id*. § 49.04 (Vernon 2003). Hubert served a portion of the sentence and was released on parole. In September 2007, Myron Reed, Hubert's grandfather and housemate, informed Aaron Garcia, Hubert's parole officer, that Hubert had violated several parole conditions. Officer Garcia issued an arrest warrant and, with Reed's consent, Nueces County constables searched the entire home, including Hubert's bedroom. The constables found guns in Hubert's bedroom, and Hubert was indicted for unlawful possession of a firearm by a felon. *Id*. § 46.04. Hubert filed a motion to suppress contending that the search violated the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, section 9 of the Texas Constitution, and article 38.23 of the code of criminal procedure. *See* U.S. CONST. amends. IV, V, VI, XIV; TEX. CONST. art. I, § 9; TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). A pre-trial hearing on Hubert's motion to suppress was held on January 28, 2008, the same date the case was set for trial.

At the suppression hearing, Garcia testified that in September 2007, he received information from Reed that Hubert had visited Colorado, driven without a valid driver's license, and possessed firearms. Garcia testified that Hubert's alleged actions were parole violations, and he issued a warrant for Hubert's arrest.

Gilberto Casas Jr., a deputy constable, received Hubert's arrest warrant. Casas testified that Hubert and Reed resided together and that he and other officers went to the

2

residence to execute the arrest warrant. On direct examination by the State, Deputy Casas was asked, "Can you tell me whether or not a search of the home was conducted pursuant to consent by the owner?" He responded, "Yes, it was." Hubert objected to the State's question on hearsay grounds, but his objection was overruled.

Deputy Casas further testified that he proceeded to Hubert's home, arrested him and placed him in a squad car outside the house. Deputy Casas then assisted the other officers in searching Hubert's bedroom. On cross-examination, Deputy Casas testified that Hubert's bedroom door was closed, and Reed opened the door and allowed the officers to search Hubert's bedroom. Inside the bedroom, Deputy Casas found weapons on top of an entertainment center and inside a closet; he also found ammunition inside a dresser.

Juan Valverde, a detective with the constable's department, testified for the State that on September 27, 2007, he assisted in arresting Hubert and searching his bedroom. Detective Valverde further testified that he believed Reed owned the residence. On cross-examination, Detective Valverde testified that Reed stated he did not sleep in Hubert's bedroom.

Rose Marie Carabajar, Hubert's girlfriend, was called to testify by Hubert. Carabajar testified that Reed and Hubert jointly owned the house; she lived in Hubert's bedroom; Reed was not allowed in Hubert's bedroom without permission; and Hubert's bedroom door was always closed. Hubert offered a certified copy of the deed to the house as evidence, but the State objected to its admission, and the trial court sustained the State's objection.

Hubert testified that he and Reed co-owned the house that was searched. Hubert's counsel again offered a copy of the deed, but the State objected to its admission on the ground that it was not filed fourteen days before trial. The trial court sustained the State's objection.

The trial court denied Hubert's suppression motion at the hearing and asked the parties if they were ready to proceed to trial. Immediately after the trial court's denial of his motion, Hubert entered into a plea-bargain agreement with the State, wherein he pleaded guilty to the offense of unlawful possession of a firearm in exchange for a sentence of five years' imprisonment. The agreement provided that Hubert waived "all pretrial motions on file except those matters ruled on by the court." Also on January 28, the trial court signed a judgment in accordance with the agreement. The trial court certified that this a plea-bargain case, but Hubert has the right to appeal matters that were raised and ruled on before entry of the agreement. This appeal followed.

## II. WAIVER OF RIGHT TO APPEAL

The State contends that Hubert waived his right to appeal by initialing several written admonishments in a document titled, "Defendant's Waiver of Rights." The State points to the following provisions:

> **Waiver of Pretrial Motions and/or Rulings on Pretrial Motions:** In the event that my lawyer filed pretrial motions on my behalf, I hereby withdraw all such motions, except those motions previously ruled upon by the Court. If the Court ruled on any pretrial motions filed on my behalf, I hereby waive my right to appeal any such rulings.

> **Waiver of Appeal:** I understand that, whether I plead guilty or nolo contendere with or without a plea bargain agreement, I may have a limited right to appeal. I hereby waive any right of appeal that I may have to the judgment of the Court.

Hubert argues that other documents contain handwritten statements which undermine the boilerplate provisions. We agree.

The State's waiver argument fails because it is based on select portions of the record that are undercut by other handwritten statements. For example, the plea bargain agreement itself waives "all pretrial motions on file *except those matters ruled* [on] *by the*

4

*Court.*" (handwritten interlineation in italics). Additionally, the "Defendant's Statement Understanding Admonishments," in relevant part, reads:

> I have decided that if the Court fully accepts the plea bargain agreement in my case, I will waive or give up any right of appeal that I have *except those matters raised by written motion and ruled upon by the Court.*

(handwritten interlineation in italics). Moreover, the trial court certified Hubert's right to appeal pre-plea bargain motions that were ruled on. *See* TEX. R. APP. P. 25.2(a)(2).

A contradictory record may rebut the validity of a boilerplate waiver. *See Alzarka v. State*, 90 S.W.3d 321, 324 (Tex. Crim. App. 2002) (holding defendant did not waive appeal and that record—in which trial judge, district attorney, and defendant's attorney repeatedly made statements agreeing that defendant would be permitted to appeal—directly contradicted and rebutted any presumption raised by terms of boilerplate plea form defendant signed). In *Gaines*, the defendant executed a boilerplate waiver form similar to Hubert's, and the pre-printed form contained a handwritten statement, "Defendant reserves his right to appeal the adverse ruling on defendant's pretrial motion to suppress evidence." *See Gaines v. State*, 99 S.W.3d 660, 664 (Tex. App.–Houston [14th Dist.] 2003, no pet.). The Fourteenth Court of Appeals held that the contradictory record did not clearly evidence a valid waiver of the defendant's right to appeal. *Id*. at 665

Because the record contains at least two specific, holographic instances evidencing Hubert's intent to retain his right to appeal pre-plea bargain motions that the trial court ruled on, we conclude that Hubert has a right to appeal those motions.

### III. MOTION TO SUPPRESS

By two subissues, Hubert contends that the trial court erred in denying his motion to suppress because (1) Reed, an alleged co-owner of the home, lacked actual authority to consent to the search of Hubert's bedroom; and (2) Reed lacked apparent authority to

5

consent to a search.  *See* TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

## A.    Standard of Review & Applicalbe Law

In reviewing a trial court's ruling on a motion to suppress, we apply the bifurcated standard of review articulated in *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We defer to the trial court's determination of historical facts and review de novo the trial court's application of the law.  *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman*, 955 S.W.2d at 88-89).  If the issue involves the credibility of a witness, we defer to the trial court's ruling, as the trial court is in a better position to evaluate the credibility of witnesses before it.  *Guzman*, 955 S.W.2d at 87, 89.  On the other hand, if the ultimate resolution of the issue depends on application of the law to the facts and not the credibility of a witness, we review that issue de novo.  *Id*. at 89.  If the trial court files no findings of fact, such as in this case, we view the evidence in a light most favorable to its ruling and will uphold that ruling on any theory of law supported by the evidence.  *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

The Fourth Amendment to the United States Constitution states that:

> [t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Similarly, Article I, section 9 of the Texas Constitution states that:

> [t]he people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

Warrantless searches are presumed to be unreasonable, but there are recognized exceptions. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing *Maryland v. Dyson*, 527 U.S. 465, 466(1999)). One of the well recognized exceptions to the warrant requirement is consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

Whether consent is valid is a question of fact to be determined from all the circumstances. *Maxwell*, 73 S.W.3d at 281 (citing *Ohio v. Robinette*, 519 U.S. 33, 40 (1996)). The federal constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas Constitution requires the State to show by clear and convincing evidence that the consent was valid. *Id*.

## B. Actual Authority

By his first subissue, Hubert claims Reed lacked actual authority to consent to a search of his bedroom. Consent to search must come from a person who has authority over the property. *See Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *Schneckloth*, 412 U.S. at 222. The legal property interest involved is not dispositive in determining whether a third party, such as Reed, has the authority to consent to a search. *Maxwell*, 73 S.W.3d at 281. Instead, we look to whether the third party had common authority over the property. "Common authority" rests "on mutual use of property by persons generally having joint access or control for most purposes." *United States v. Matlock*, 415 U.S. 164, 171 n.7(1974). A third party may properly consent to a search when the party has equal control over and equal use of the premises being searched. *Maxwell*, 73 S.W.3d at 281.

In this case, the State presented testimony from two law enforcement officers. Deputy Casas testified that he received consent to search the home from Reed, who was

believed to be the homeowner. Deputy Casas further testified, however, that Hubert's bedroom door was closed, that Reed opened it for the officers, and that Hubert, who could have consented to a search of bedroom, was sitting in a patrol car outside the house. Detective Valverde testified Reed informed him that only Hubert slept in the bedroom. Neither Deputy Casas's nor Detective Valverde's testimony amounts to any evidence that Reed exercised actual control over Hubert's bedroom. This case is similar to a court of criminal appeals case and two cases from our sister courts.

In *Becknell v. State*, a father authorized a search of his adult son's bedroom, in the father's house. 720 S.W.2d 526, 528 (Tex. Crim. App. [Panel Op.] 1986). The father told authorities he was allowed in the room only when his son was present, and the son had the only key to the locked room. *Id*. The Texas Court of Criminal Appeals found the father did not have actual authority to authorize the search. *Id.*

In *Corea v. State*, although Corea's bedroom door was open and his brother-in-law had access to common areas of the apartment, the brother-in-law told officers at the scene that no one other than Corea lived in the bedroom. 52 S.W.3d 311, 314 (Tex. App.–Houston [1st Dist.] 2001, pet. ref'd). The court concluded the brother-in-law did not have equal control and access to the bedroom that would give him the authority to consent to a search of the bedroom. *Id*. at 316. The court further noted that "[a]n unlocked door is not an invitation to enter." *Id*. at 317.

In *Malone v. State*, Malone's deaf-mute brother lived in the same house as Malone, but stayed in the living room, and one of the State's officers said that, to his knowledge, the brother did not live in the same bedroom as Malone. 163 S.W.3d 785, 796 (Tex. App.–Texarkana 2005, pet. ref'd). The court held that the State failed to show that the brother had actual authority to consent to a search of Malone's room. *Id.*

8

Because the State failed to show that Reed had actual authority to consent to a search of Hubert's bedroom, Hubert's first subissue is sustained.

## C.    Apparent Authority

By his second subissue, Hubert contends the evidence does not establish that Reed had apparent authority to consent to the search.[1]  Under federal constitutional principles, a third party's apparent authority to consent to a search will suffice when the facts available to the officer would lead a person of reasonable caution to believe that the third party had authority to consent to the search.  *See Illinois v. Rodriguez*, 497 U.S. 177, 188-89 (1990).  If the officers do not learn enough and if the circumstances make it unclear whether the property is subject to "common authority" of the person giving consent, "then warrantless entry without further inquiry is unlawful unless authority actually exists."  *Id*.  The State bears the burden of proving that the person who gave consent had the actual or apparent authority to do so.  *Id*. at 181.  The State cannot satisfy this burden if officers proceed without making further inquiry into an ambiguous situation. *Corea*, 52 S.W.3d at 317.

If officers reasonably believed that the third party had common authority over the place to be searched, then their good-faith mistake will not invalidate the search. This deference does not mean, however, that they may rely on consent given in ambiguous circumstances or that clearly appears unreasonable.  *Riordan v. State*, 905 S.W.2d 765, 771 (Tex. App.–Austin 1995, no pet.).  While the apparent authority doctrine should not be applied so strictly that it places too heavy a burden on police, it cannot allow law enforcement officers to proceed without inquiry into ambiguous circumstances or to always accept at face value the consenting party's apparent assumption or claim of authority to

---

[1] The court of criminal appeals has not explicitly accepted the apparent authority doctrine.  *McNairy v. State*, 835 S.W.2d 101, 105 (Tex. Crim. App. 1991).  It has, however, found it helpful.  *Id*.  We, on the other hand, have employed it.  *See, e.g., Cody v. State*, No. 13-00-00402-CR, 2001 Tex. App. LEXIS 4288, at *2 (Tex. App.–Corpus Christi Jun. 28, 2001, no pet.) (mem. op., not designated for publication).

allow the contemplated search. *Id*.

In this case, the officers encountered a closed bedroom door, heard Reed say that he did not sleep in Hubert's bedroom, and witnessed Reed open the bedroom door. The evidence elicited by the State regarding Reed's assumption of apparent authority over Hubert's bedroom was ambiguous at best, and a reasonable person in the officer's place would have inquired further. *See Corea*, 52 S.W.3d at 317 ("The burden [that the State bears of proving apparent authority] cannot be met if officers, faced with an ambiguous situation, nevertheless proceed without making further inquiry."). The officers' search of Hubert's bedroom was therefore unreasonable. Hubert's second subissue is sustained.

## IV. Conclusion

Because the State failed to demonstrate a reasonable basis on which consent was obtained, we sustain Hubert's first issue and hold that the trial court erred in denying his motion to suppression. Furthermore, we reverse the trial court's judgment, and remand the case to the trial court for further proceedings consistent with this opinion.

_____
ROGELIO VALDEZ
Chief Justice

Publish. Tex. R. App. P. 47.2(b).
Opinion on Rehearing delivered and filed
this the 26th day of February, 2009.

10