NUMBER 13-08-00543-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MILES PARK, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 




On appeal from the 94th District Court 

of Nueces County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Benavides, and Vela

Memorandum Opinion by Justice Yañez

 Following the trial court's denial of his motion to suppress, appellant, Miles Park,
pleaded guilty to the offense of unlawful possession of methamphetamine. (1) The trial court
placed appellant on deferred adjudication community supervision for four years, assessed
a $1,000 fine, and certified appellant's right to appeal. By one issue, appellant appeals the
trial court's denial of his motion to suppress. We reverse and remand.

I. Procedural Background

 On December 19, 2007, the trial court held a hearing on appellant's motion to
suppress evidence. Officer Carl Wright and Linda Park testified at the hearing. The trial
court granted appellant's motion to substitute counsel, and on May 22, 2008, the trial court
held a hearing on defendant's motion for reconsideration of his motion to suppress. At this
hearing, appellant and his girlfriend, Robin Caatz, testified. The trial court denied
appellant's motion to suppress evidence. Appellant pleaded guilty to unlawful possession
of methamphetamine ("meth"), and the trial court placed him on deferred adjudication
community supervision. This appeal ensued.

II. Preservation and Waiver

 As a preliminary matter, we must address the State's assertions that appellant has
not preserved his issue for appellate review and has waived his appeal.

 The State first argues that appellant did not preserve error because he did not
specifically identify what evidence he wanted suppressed in his motion. The State relies
on Amador v. State, where the court of criminal appeals stated the following:

 Appellant's motion to suppress did not identify what evidence he wanted
suppressed, nor, as far as we can discern from the record, was such
evidence identified at the suppression hearing. This is troubling. As
Professor LaFave has pointed out, a motion to suppress "must . . . identify
the items which the defendant seeks to suppress." In the absence of such
identification, the State and the trial court are left unaware of how the
defendant was harmed by the allegedly illegal government activity. It could
be argued that, under such circumstances, the trial court could properly deny
the motion to suppress as inadequate. In the instant case, however, the
State has not made such an argument, and we did not grant review to
consider it.[ (2)]


 Although we agree with the State that in this case, appellant's motion to suppress
did not specifically state the items he sought suppressed, it was apparent from the context
of the suppression hearing what items appellant sought to suppress. (3) At the suppression
hearing, defense counsel identified the following evidence that the police allegedly
obtained illegally: (1) a pipe; and (2) some "baggies" that contained meth. Moreover, at
the suppression hearing, the State demonstrated an understanding that appellant sought
to suppress the pipe and the baggies containing the meth. Finally, appellant pleaded guilty
to unlawful possession of meth. Based on this record, the State and the trial court were
aware that appellant sought to suppress the meth found in his residence and were aware
of how appellant was harmed by the allegedly illegal government activity. (4) Therefore, we
conclude that appellant has preserved error in this case.

 Next, the State argues that appellant agreed to waive "all pretrial motions on file"
in his plea agreement. In Durham v. State, this Court concluded that the appellant waived
his right to appeal all pretrial motions because his plea agreement expressly stated that he
agreed to "waive all pretrial motions on appeal." (5) However, in Hubert v. State, we
concluded that although Hubert initialed provisions in a plea agreement stating that he
waived any right to appeal any pretrial motions filed on his behalf, "[t]he State's waiver
argument fail[ed] because it [was] based on select portions of the record that [were]
undercut by other handwritten statements." (6) We reasoned that Hubert had not waived his
right to appeal his pretrial motions because "[a] contradictory record may rebut the validity
of a boilerplate waiver" and "[b]ecause the record contain[ed] at least two specific,
holographic instances evidencing Hubert's intent to retain his right to appeal pre-plea
bargain motions that the trial court ruled on." (7)

 In this case, the plea agreement states that appellant waived any pretrial motions
on file; however, it also states that appellant did not waive his right to appeal an adverse
ruling on his pretrial motions. In a document entitled "Defendant's Statement
Understanding Admonishments," appellant's initials appear next to the following statement:

 With the assistance of my lawyer, I have entered into a plea bargain
agreement with the State. My lawyer has explained the plea bargain to me. 
I understand the plea bargain and I agree to it. I understand that if the [trial
court] follows the plea bargain, I am not allowed to appeal the judgment of
the [trial court] unless the [trial court] gives me permission to appeal or
except on those matters raised by pretrial motion and ruled upon by the [trial
court]. Nonetheless, I want the [trial court] to accept my plea and to follow
the plea bargain agreement. [Emphasis added].


Finally, the trial court certified that appellant had the right to appeal although this was a
plea bargain case, because "matters were raised by written motion filed and ruled on
before trial and not withdrawn or waived." (8) This case is much like Hubert because the
record evidences appellant's intent to retain his right to appeal pre-plea-bargain motions
that the trial court ruled on. (9) Therefore, assuming without deciding, that the complained-of
language could be construed as a waiver of appellant's right to appeal his pretrial motions,
the language in the trial court's certification of appeal, defendant's statement understanding
admonishments, and appellant's plea agreement "directly contradicts and rebuts any
presumption raised by the terms of the boiler-plate plea form signed by appellant and
reflects that appellant did not waive appeal." (10) 

 Therefore, we conclude that appellant has not waived his right to appeal his pretrial
motion to suppress.

III. Suppression Hearing

 Officer Wright testified that he went to appellant's residence with Officer B. Moss, (11)
who had previously attempted to "do an undercover narcotics buy from that apartment"
after appellant's neighbor had complained "that there was constant traffic at all hours of the
night to and from the residence" and that "[t]here was always the smell of marijuana, burnt
marijuana, but mainly just traffic up and down the stairs." Officer Moss was unsuccessful
in his attempt to purchase narcotics from anyone at appellant's residence. According to
Officer Wright, because the undercover buy was unsuccessful and there were "no
informants to that house," the next step was to knock on the door and explain why they
were there.

 A couple of weeks later on May 5, 2007, Officers Wright and Moss returned to
appellant's apartment for "a knock and talk." Officer Wright acknowledged that they did
not have a warrant or probable cause to acquire a warrant to enter appellant's residence;
however, according to Officer Wright, if appellant consented, they could have entered
appellant's residence. When Officer Wright knocked on the door, appellant answered, and
Officer Wright, who was not wearing a police uniform, showed appellant his badge and
informed appellant that he was investigating "complaints of drug dealing." According to
Officer Wright, while the officers were still outside, appellant explained "that he had briefly
had a bad roommate that kind of took over his apartment and that person was actually the
one selling drugs." Officer Wright also testified that during the initial conversation,
appellant stated that "all he had done was smoke a little weed."

 Officer Wright stated that appellant did not ask him to enter the residence. 
According to Officer Wright, while still outside, he observed appellant's "hand [go] into that
couch that was right by the door," and entered appellant's residence for his "safety." 
Officer Wright explained, "I didn't know what he was reaching for so I grabbed him and
secured him." Officer Wright handcuffed appellant. Officer Wright explained that appellant
was not placed under arrest, but was "being lawfully detained for [the officers'] safety." 
Officer Wright stated that Officer Moss then conducted a "protective sweep" of the
apartment for their "safety." Appellant would not consent to a search of his apartment;
therefore, Officer Moss obtained a search warrant based on items that were allegedly in
"plain view." In his affidavit for the search warrant, admitted as defense exhibit one, Officer
Moss stated:

 [Officer] Wright made a protective sweep of the back room and the remaining
portions of the apartment. During the sweep [Officer] Wright observed
mushrooms growing in the middle bedroom. He also observed a clear
plastic baggie with a crystaline [sic] substance in the back bedroom where
[Caatz] was and also in plain view in the living room was several small plastic
baggies containing more crystline [sic] substance believed to be a controlled
substance.[ (12)]


 Caatz testified that she was asleep in the back bedroom when the police arrived at
her residence. She stated that the police spoke with appellant at the front door for about
five minutes and then appellant came into the bedroom to get his wallet. According to
Caatz, she opened the bedroom door and could see appellant; however she was unable
to see the police because the front door was blocking her view. Caatz testified that
appellant was "keeping the [front] door a little bit-barely open and just standing there." 
Caatz stated that the "first time" she saw the police officers was "after they came in and
put [appellant] in handcuffs and set him on the couch." Caatz closed her bedroom door. 
The officers then asked Caatz to come out of the bedroom, and she complied. The officers
placed Caatz in handcuffs and asked her to sit on the couch. According to Caatz, Officer
Wright then conducted a "sweep" of the apartment without a warrant. Approximately two-and-one-half hours later, the officers acquired a warrant to search the apartment.

 Appellant testified that he heard a knock at the door. When he answered the door,
he saw Officer Moss standing behind Officer Wright. According to appellant, he "cracked"
the door open, and he talked to the officers through this "crack." After the officer requested
his identification, appellant closed the door and got his identification and then showed it to
the officers, who explained that they had "suspicion that [appellant was] selling narcotics
out of his apartment. . . ." The officers informed appellant that they did not have a warrant;
however, according to appellant, the officers stated that if he did not give them consent to
enter his residence, one officer would stand outside the apartment, while the other
obtained a warrant. Appellant testified that he stated, "Okay, well come back with a search
warrant." According to appellant, he attempted to close the front door when Officer Wright
"stopped" him, and the two officers entered appellant's apartment. Appellant stated that
he asked Officer Wright, "So, what's going on?," and Officer Wright replied, "Sir, I smell
marijuana and I'm patting you down. . . .  I'm patting you down for a protective sweep."

 Appellant asserted that he reached for the couch after Officer Wright came into the
house, stating, "And as [Officer Wright was] patting down, I reached into my pocket and
I pitched the pipe into the corner of the couch." Then according to appellant, Officer Moss
retrieved the pipe and said, "Now we have probable cause." The officers placed Caatz in
handcuffs, and Officer Wright "went through the apartment and did . . . a protective
sweep."

 Appellant testified that one of the officers "kept asking [him] for consent to search"
and presented him with a consent form; however, appellant asked to speak to his attorney,
and the officers stated they were no longer able to ask for consent to search the
apartment. According to appellant, Officer Moss left to "type up . . . the report for the
search warrant." Defense exhibit one, a blank consent-to-search form with the word
"Kaatz" [sic] handwritten on it was admitted through appellant's testimony. Appellant
asserted that he later found the form in the trash can in his apartment.

IV. Standard of Review

 Whether the trial court properly denied a defendant's motion to suppress is reviewed
under a bifurcated standard of review. (13) We give almost total deference to the trial court's
determination of historical facts and review de novo the trial court's application of law to
facts not turning on credibility and demeanor. (14) When, as in this case, the trial court makes
no explicit findings of historical fact, the evidence must be viewed in the light most
favorable to the trial court's ruling. (15) We must uphold the trial court's ruling if it is correct
under any theory of law applicable to the case. (16) "Absent a clear abuse of discretion, the
ruling on the admissibility of evidence will not be disturbed." (17)

V. Discussion

 By his sole issue, appellant contends that the trial court should have granted his
motion to suppress evidence because the warrantless search of his residence was not
reasonable under the totality of the circumstances. Specifically, appellant argues that: (1)
there was no probable cause combined with exigent circumstances to enter his residence;
(2) the undisputed evidence shows that appellant did not give his consent for police to
enter his residence; and (3) the officers did not reasonably believe that a crime was being
committed in their presence allowing them to arrest appellant. The State argues that
"[a]ppellant's discussion of the exigent circumstances doctrine and the requirement of
probable cause is irrelevant under the facts of this case as viewed in the light most
favorable to the trial court's ruling." The State asserts that the officers were excused from
acquiring a warrant under the emergency doctrine.

 An individual is guaranteed the right to be secure from unreasonable searches. (18) 
A warrantless search is presumptively unreasonable under the Fourth Amendment, unless
a recognized exception to the warrant requirement exists. (19) A warrantless search may be
validated under the doctrine of exigent circumstances, a recognized exception to the
warrant requirement. (20) Under the exigent circumstances doctrine, the State may justify a
warrantless search or entry of a specific location if it shows that: (1) probable cause
existed to enter or search the specific location at the time the search was made; and (2)
exigent circumstances existed, which made the procuring of a warrant impracticable. (21)

 Probable cause to search exists when reasonably trustworthy facts and
circumstances within the knowledge of the officer on the scene would lead
a man of reasonable prudence to believe that the instrumentality of a crime
or evidence of a crime will be found. Probable cause that points like a
beacon toward the location (but not necessarily any particular person) is the
first hurdle. The second hurdle is that exigent circumstances, those which
justify an immediate need to enter a residence without first obtaining a
search warrant, must also exist.[ (22)]


 Another recognized exception to the warrant requirement is the emergency
doctrine. (23) Under the emergency doctrine, a warrant is not required if the officer has an
immediate, reasonable belief that he or she must act to "protect or preserve life or avoid
serious injury." (24) "The exigent circumstances doctrine applies when the police are acting
in their 'crime-fighting' role. . . .  [T]he emergency doctrine applies when the police are
acting, not in their 'crime-fighting' role, but in their limited community caretaking role to
'protect or preserve life or avoid serious injury.'" (25)

 First, we will address the State's argument that the officers' initial intrusion into
appellant's apartment was valid under the emergency doctrine, and that therefore, the trial
court did not abuse its discretion when it denied appellant's motion to suppress. Officer
Wright testified at the suppression hearing that when the officers went to appellant's
apartment, they were investigating possible "drug dealing" at appellant's apartment. Here,
the police officers were investigating a possible criminal act and were not "totally divorced
from the detection, investigation, or acquisition of evidence relating to the violation of a
criminal statute." (26) Therefore, because the officers were acting in their "crime-fighting role,"
the emergency doctrine does not apply. (27) We must next determine whether the
warrantless entry into appellant's apartment was valid under the exigent circumstances
doctrine. (28)

 Viewing the evidence in the light most favorable to the trial court's ruling, the
evidence showed the following: (1) a concerned citizen reported that there was excessive
traffic to and from appellant's apartment at all hours of the day; (2) appellant admitted that
his former roommate sold drugs from his apartment; (3) appellant stated that he smoked
marihuana; (4) Officers Moss and Wright smelled marihuana; (29) and (5) appellant's "hand
went into that couch that was right by the door." (30)

 These facts and circumstances known to Officer Wright would have reasonably led
a man of reasonable prudence to believe that the instrumentality of a crime or evidence
of a crime would be found. (31) However, a warrantless entry will not withstand judicial
scrutiny if the State does not establish both probable cause and exigent circumstances. (32) 
The court of criminal appeals has "identified three categories of exigent circumstances that
justify a warrantless intrusion by police officers: 1) providing aid or assistance to persons
whom law enforcement reasonably believes are in need of assistance; 2) protecting police
officers from persons whom they reasonably believe to be present, armed, and dangerous;
and 3) preventing the destruction of evidence or contraband." (33)

 The exigent circumstances analysis focuses upon the reasonableness of the
officers' investigative tactics leading up to the warrantless entry. In
determining whether exigent circumstances exist, "we apply an objective
standard of reasonableness . . ., taking into account the facts and
circumstances known to the police at the time of the search. Thus, the
determination of whether exigent circumstances exist is 'essentially a factual
one.' Therefore, if 'reasonable minds may differ' the courts should not
second-guess the judgment of experienced law enforcement officers
concerning the risks of a particular situation.[ (34)]


 Here, Officer Wright testified that he believed that he needed to secure appellant
for the officers' "safety" when appellant made a gesture Officer Wright described as
"furtive." Officer Wright testified on cross-examination by the State that when appellant
reached for the couch, he believed that appellant was "reaching for some type of weapon,"
and based on his training and experience, he secured appellant. The trial court could have
concluded that Officer Wright reasonably believed appellant was armed and dangerous
because appellant moved his hand toward a couch cushion while speaking with Officer
Wright.

 Therefore, the issue is whether it was reasonable for the trial court to determine that
exigent circumstances existed because Officer Wright saw appellant's "hand [go] into that
couch that was right by the door." According to Officer Wright, when appellant reached his
hand toward the couch, appellant was "able to stand and talk to [Officer Wright] . . . while
not moving." Officer Wright testified that appellant did not appear to be armed when they
were talking and did not appear "mad" at the officer. When asked if he had any reason to
suspect that appellant "would be getting a weapon to attack [him]," Officer Wright
responded that he "[has] no idea what people are going to do when they reach into
couches." A weapons search is "only justified where the officer can point to specific and
articulable facts which reasonably lead him to conclude that the suspect might possess a
weapon." (35) Although Officer Wright stated that he "believed" that appellant was reaching
for a weapon, Officer Wright did not articulate any facts supporting his belief. And when
defense counsel asked Officer Wright if appellant had "[gone] towards the couch in a
threatening manner," Officer Wright stated, "No, it was just a quick furtive movement." 
Again, although Officer Wright characterizes appellant's movement as "furtive," he did not
point to any specific and articulable facts that led him to conclude that appellant might have
possessed a weapon. (36)

 By Officer Wright's account, appellant was cooperative and did not appear agitated
or threatening. There is no evidence that appellant acted suspiciously before he reached
for the couch cushion, and appellant did not bend down or lunge toward the couch. Officer
Wright did not testify that appellant lied to him or offered contradictory information. (37) In
fact, Officer Wright stated that appellant honestly admitted that he smoked marijuana and
had a "bad roommate" who had been dealing drugs. Furthermore, Officer Wright did not
state any specific facts suggesting that appellant was armed, had committed a violent
offense, or was about to do so. Nothing appellant did would reasonably lead to a
conclusion that he was reaching for a weapon. The dissent states that we have overlooked
the danger that a police officer faces when an officer believes a person is reaching for a
weapon. However, we have concluded that in this case, Officer Wright did not articulate
any facts to support his belief that appellant was reaching for a weapon. Furthermore,
"[s]ituations creating exigent circumstances usually include factors pointing to some danger
to the officer. . . ." (38) Here, Officer Wright did not state any factors pointing to some danger
to him. Therefore, taking into account the facts known to Officer Wright at the time the
police entered appellant's residence, we conclude that it was not reasonable for the trial
court to determine that appellant was reaching for a weapon when appellant reached
toward the couch. (39) 

 We sustain appellant's sole issue.

VI. Conclusion

 We reverse and remand for proceedings consistent with this opinion.

 

 _______________________

 Linda R. Yañez,

 Justice

Do not publish. 

Tex. R. App. P. 47.2(b).


Dissenting Memorandum Opinion

by Justice Rose Vela.


Delivered and filed

the 25th day of March, 2010.
1. See Tex. Health & Safety Code Ann. § 481.115(a)-(b) (Vernon Supp. 2009).
2. 275 S.W.3d 872, 874 n.3 (Tex. Crim. App. 2009) (internal citations omitted).
3. See Tex. R. App. P. 33.1(1)(A) (providing that to preserve a complaint for appellate review, the
record must show that the complaint was made to the trial court by a timely motion that "stated the grounds
for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial
court aware of the complaint, unless the specific grounds were apparent from the context"); see also Amador,
275 S.W.3d at 874 n.3.
4. See Amador, 275 S.W.3d at 874 n.3; see also Tex. R. App. P. 33.1(1)(A).
5. No. 13-98-00568-CR, 2000 Tex. App. LEXIS 4094, at *3-4 (Tex. App.-Corpus Christi June 15, 2000,
no pet.) (mem. op., not designated for publication).
6. 286 S.W.3d 484, 488-89 (Tex. App.-Corpus Christi 2009, no pet.).
7. Id. at 489.
8. See Alzarka v. State, 90 S.W.3d 321, 323-24 (Tex. Crim. App. 2002) (concluding that it was clear
that the trial court and the prosecutor intended for appellant to have the right to appeal despite the language
in the plea agreement stating "after consulting with my attorney, I voluntarily, knowingly and intelligently, waive
my right to appeal").
9. See Hubert, 286 S.W.3d at 489.
10. See id.
11. Officer Moss's first name does not appear in the record, and he did not testify at the pretrial hearing.
12. Officer Moss also found "a clear glass 'pipe' with burnt white residue on it under the couch's
cushion."
13. St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).
14. Scardino v. State, 294 S.W.3d 401, 405 (Tex. App.-Corpus Christi 2009, no pet.); see Ford v. State,
158 S.W.3d 488, 493 (Tex. Crim. App. 2005).
15. St. George, 237 S.W.3d at 725.
16. Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).
17. Fonseca v. State, 881 S.W.2d 144, 149 (Tex. App.-Corpus Christi 1994, no pet.) (citing Rivera v.
State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).
18. U.S. Const. amend IV; Tex Const. art. I § 9.
19. United States v. Karo, 468 U.S. 705, 717 (1984); Fonseca, 881 S.W.2d at 149.
20. Gutierrez v. State, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); see Fonseca, 881 S.W.2d at 149
(providing that "[t]he State bears the burden of establishing the legality of a warrantless search or seizure").
21. Gutierrez, 221 S.W.3d at 685 (explaining that "if police have probable cause coupled with an exigent
circumstance . . . the Fourth Amendment will tolerate a warrantless search"); see Parker v. State, 206 S.W.3d
593, 597 n.7 (Tex. Crim. App. 2006) (setting out that "a warrantless entry into a residence is considered
equivalent to a warrantless search") (citing McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991)
(en banc)).
22. Parker, 206 S.W.3d at 597 (quoting Estrada, 154 S.W.3d at 609) (internal quotations omitted).
23. Mincey v. Arizona, 437 U.S. 385, 392 (1978); Laney v. State, 117 S.W.3d 854, 861 (Tex. Crim. App.
2003).
24. Mincey, 437 U.S. at 392.
25. Laney, 117 S.W.3d at 861.
26. See id. at 862-63.
27. See id. (concluding that the emergency doctrine applied because the officer's "actions were totally
divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal
statute," and the officer was protecting a child).
28. Even though the State argues that the "discussion of the exigent circumstances doctrine and the
requirement of probable cause is irrelevant," we must address any theory that would support the trial court's
ruling. See Estrada, 154 S.W.3d at 607.
29. See id. at 609 ("The 'odor of an illegal substance' may be a factor that police officers use in
determining whether there is probable cause that an offense has been or is being committed.").
30. See Dixon v. State, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006) ("Probable cause to search exists
when the totality of the circumstances allows a conclusion that there is a fair probability of finding contraband
or evidence at a particular location.").
31. See Parker, 206 S.W.3d at 597; Estrada, 154 S.W.3d at 609 (concluding that the odor of marihuana
combined with officer's observation of minors under the influence of alcohol, and statement from minors that
they had been smoking marihuana and drinking alcohol in the residence was "enough to establish that there
was probable cause for [the police officer] to believe that a crime had been or was being committed, and that
evidence of that crime would be found" in the defendant's residence).
32. Gutierrez, 221 S.W.3d at 685.
33. Id.
34. Cardenas v. State, 115 S.W.3d 54, 61 (Tex. App.-San Antonio 2003, no pet.); see Parker, 206
S.W.3d at 597 ("[T]he determination of whether an officer has probable cause and exigent circumstances to
enter a person's home without a warrant is a factual one based on the sum of all the information known to the
officer at the time of entry.").
35. Carmouche v. State, 10 S.W.3d 323, 329 (Tex. Crim. App 2000).
36. There was no evidence presented at the suppression hearing that the officers were attempting to
prevent the destruction of contraband or evidence. See Gutierrez, 221 S.W.3d at 685.
37. Cf. Balentine v. State, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (finding that because the
defendant's behavior became increasingly suspicious and the defendant gave contradictory and false
answers, the officer was justified in searching the defendant for weapons).
38. McNairy, 835 S.W.2d at 107.
39. We note that although appellant admitted that his roommate sold drugs from his apartment and that
he smoked marijuana, there was no evidence presented that these facts would reasonably lead to a
conclusion that appellant was armed and dangerous.