NUMBER 13-08-00293-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


DOMINGO CHAVEZ SEGOVIANO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 




On appeal from the 139th District Court


 of Hidalgo County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Benavides, and Vela

Memorandum Opinion by Justice Yañez


 Appellant, Domingo Chavez Segoviano, pleaded "guilty" to one count of possession
of marihuana in an amount greater than 2,000 pounds. (1) Pursuant to a plea agreement,
the trial court sentenced appellant to five years' confinement in the Texas Department of
Criminal Justice, Institutional Division. By one issue, appellant challenges the trial court's
denial of his motion to suppress. We affirm.

I. Background

 After a traffic stop, marihuana was found in a vehicle driven by appellant. Appellant
was charged with possession of marihuana in an amount of more than two hundred
pounds. Appellant filed a motion to suppress all evidence seized from his vehicle. At a
hearing on appellant's motion to suppress, DPS Trooper Ricardo Huerta testified on behalf
of the State. No other testimony was offered at the suppression hearing.

 At the hearing, Trooper Huerta stated that he received a call from Sergeant Daniel
Martinez, a DPS narcotics officer, asking him to establish probable cause to stop
appellant's vehicle. According to Trooper Huerta, Sergeant Martinez also instructed him
to gain appellant's consent to search the vehicle. Trooper Huerta described appellant's
vehicle as "a black truck tractor semi-trailer with white box." When Trooper Huerta saw
appellant's truck, he began pursuing it. Trooper Huerta testified that he observed appellant
driving his truck "too close" to the vehicle in front of it. Trooper Huerta initiated a traffic
stop for driving at an unsafe distance. The trial court admitted a video taped recording of
the encounter, which was played and entered into the record. (2)

 The video shows that Trooper Huerta informed appellant that he had been stopped
for driving at an unsafe distance and asked appellant to produce his commercial driver's
license, registration, proof of insurance, and bill of lading. Appellant complied. The tape
shows that Trooper Huerta then asked appellant if he had any marihuana in the truck or
the trailer. Appellant replied, "No." Trooper Huerta asked, "Nothing in the trailer hidden
inside or anything like that?," and appellant responded, "You can walk in if you want to. 
Okay." Trooper Huerta testified that he "took that as a consent."

 The video shows Trooper Huerta returning appellant's driver's license and giving
appellant a written warning for the traffic violation. The State asked Trooper Huerta, "Now,
you enter your vehicle here at [3:06 p.m.]. What are you doing in your vehicle at this
point?", and Trooper Huerta replied, "I'm probably calling his history check or mak[ing] sure
he's not wanted or something." The State then asked, "What were you doing at that point
in time when you entered the vehicle?", and Trooper Huerta responded, "Okay. If I was
going to do it, I was probably going to call communications and check for his--his driver's
license check actually, see if he had any warrants or--" According to Trooper Huerta, he
prepared the consent to search form "[r]ght after that." The videotape was fast forwarded
to 3:09 showing appellant signing and Trooper Huerta witnessing the consent to search
form. Trooper Huerta then conducted a search of appellant's vehicle, and Sergeant Rick
Rivera arrived and joined the search of the vehicle. Trooper Huerta testified that he did not
find any contraband while conducting the search, but when the K-9 unit arrived the dog
alerted to the odor of narcotics. The videotape ended at 3:21 before the K-9 units arrived. 
According to Trooper Huerta, he left the area of the traffic stop at 3:31.

 On cross-examination, Trooper Huerta testified that he stopped appellant at 2:56,
but in fact, the video showed that he "gave the signal" at 2:51 and that by 2:52, appellant
had stopped on the side of the road. Trooper Huerta agreed that it was approximately
fourteen minutes from the time he stopped appellant until he issued the warning citation
and that once he handed appellant the citation, the traffic stop was over. Trooper Huerta
agreed that the tape ran thirty minutes, and that during that time the K-9 units had not
arrived.

 Trooper Huerta thought it was suspicious that appellant "reiterated [Trooper
Huerta's] questions." However, defense counsel informed Trooper Huerta that appellant
only repeated one question that he asked. Defense counsel asked, "Okay. So of all the
questions you asked over a fifteen-minute period, he answered your questions very clearly,
didn't he?," and Trooper Huerta replied, "Yes." Trooper Huerta agreed that all of the
documents he reviewed on the day he stopped appellant "appeared to be in perfect order."

 Defense counsel asked if after the traffic stop was completed, during a three minute
lag, Trooper Huerta had called Sergeant Martinez. Trooper Huerta stated, "Yes, I did" and
agreed that he had recounted the events of the traffic stop to Sergeant Martinez and
informed him that he had obtained consent to search the vehicle. Trooper Huerta then
asked appellant to sign the form, entered appellant's vehicle, and the other officers arrived. 
Trooper Huerta did not observe anything "out of the ordinary" when he searched
appellant's vehicle.

 According to Trooper Huerta, the K-9 units arrived sometime after the tape ended. 
The dog alerted, and Sergeant Rivera asked appellant if they could escort him to the "port
of entry," which was approximately twenty miles away. Trooper Huerta asserted that they
left the area at 3:31 p.m. and arrived at the port of entry approximately one hour later. Fork
lift operators then removed cargo from the vehicle and marihuana was discovered in the
cargo at 5:00 p.m.

 The trial court denied appellant's motion to suppress. Pursuant to a plea agreement
with the State, appellant pleaded guilty to possession of marihuana in an amount of more
than 2,000 pounds. (3) The trial court sentenced appellant to five years' incarceration. This
appeal ensued.

II. Standard of Review and Applicable Law

 Whether the trial court properly denied a defendant's motion to suppress is reviewed
under a bifurcated standard of review. (4) We give almost total deference to the trial court's
determination of historical facts and review de novo the trial court's application of law to
facts not turning on credibility and demeanor. (5) When, as in this case, the trial court makes
no explicit findings of historical fact, the evidence must be viewed in the light most
favorable to the trial court's ruling. (6) We must uphold the trial court's ruling if it is correct
under any theory of law applicable to the case. (7) "Absent a clear abuse of discretion, the
ruling on the admissibility of evidence will not be disturbed." (8)

 An individual is guaranteed the right to be secure from unreasonable searches and
seizures. (9) The stopping of a vehicle and the detention of its occupants constitute a seizure
within the meaning of the Fourth Amendment. (10) To determine whether an investigative
detention was reasonable, we apply the following two-part test as articulated in Terry v.
Ohio: (1) was the officer's action justified at its inception; and (2) were the officer's actions
reasonably related in scope to the circumstances that justified the initial interference. (11)

 Under the first prong of Terry, the detention must be based on a reasonable
suspicion to warrant the intrusion. (12) "The second prong of Terry deals with the scope of
the detention," and "Texas Courts recognize that investigative detentions become
unreasonable when they are not reasonably related in scope to the circumstances which
justified the interference in the first place." (13)

 A warrantless search is presumptively unreasonable under the Fourth Amendment,
unless a recognized exception to the warrant requirement exists. (14) One well-established
exception to the warrant requirement is voluntary consent. (15)

III. Analysis

 By his sole issue, appellant contends that the trial court abused its discretion by
denying his motion to suppress. Specifically, appellant asserts that Trooper Huerta
acquired his consent to search his vehicle after unlawfully detaining "him beyond the time
that his traffic stop had been completed."

A. Was the initial stop justified?

 Appellant argues that Trooper Huerta "lacked sufficient articulable facts upon which
to stop [him] and to conduct a narcotics investigation." It appears that appellant challenges
the initial stop.

 An officer may lawfully stop and detain a person for a traffic violation regardless of
the officer's subjective reasons for the detention. (16)

 Texas Transportation Code section 545.062(a) provides that

 [a]n operator shall, if following another vehicle, maintain an assured clear
distance between the two vehicles so that, considering the speed of the
vehicles, traffic, and the conditions of the highway, the operator can safely
stop without colliding with the preceding vehicle or veering into another
vehicle, object, or person on or near the highway.[ (17)]

 Trooper Huerta testified that although he followed appellant's vehicle with the
subjective intent of stopping appellant pursuant to Sergeant Martinez's instructions,
Trooper Huerta initiated the traffic stop after observing appellant commit a traffic violation. (18) 
Trooper Huerta stated that he saw appellant's vehicle follow another vehicle "too closely." 
Trooper Huerta testified that appellant's vehicle was only one car-length behind the car in
front of him, and that was an unsafe distance. Trooper Huerta agreed with the State when
it asked, "Now, based on your experience, if that tractor trailer were to--were to have to
come to a sudden stop, would it be posing a risk to the vehicle in front of it from the
distance it was following it?"

 Thus, the trial court could have reasonably found that Trooper Huerta observed
appellant commit a traffic violation. (19) Therefore, we conclude that Trooper Huerta had
reasonable suspicion to justify the stop. (20)

B. Did Trooper Huerta exceed the scope of the detention?

 Next, Appellant argues that because the sole basis for the stop was Trooper
Huerta's observation that appellant committed a traffic violation, the scope of his
investigation was limited to that purpose, and his "continued detention . . . was premised
solely upon the Trooper's intention to conduct a narcotics investigation, was not founded
upon reasonable, articulable facts sufficient to justify his continued detention, [and] was not
based upon consent." It appears that appellant complains that the traffic stop ended when
Trooper Huerta gave him the warning and that therefore, the subsequent detention was
unlawful.

 Viewing the evidence in the light most favorable to the trial court's ruling, the
evidence showed the following: (1)Trooper Huerta stopped appellant for a traffic violation;
(2) during the course of the traffic stop, appellant told Trooper Huerta he was free to walk
into the trailer; (3) Trooper Huerta believed that appellant had consented to a search of his
vehicle at this point; (4) after Trooper Huerta gave appellant a warning, he went back to his
vehicle to determine whether appellant had any warrants and to fill out the consent to
search form; (21) (5) appellant signed the consent to search form; (6) Trooper Huerta testified
that appellant never "revoked" his consent to search; (7) drug-sniffing dogs alerted for
narcotics; (22) and (8) marihuana was discovered hidden in appellant's vehicle. Based on the
evidence presented, the trial court could have reasonably concluded that appellant orally
consented to a search of his vehicle during the investigation of the traffic violation. (23) Thus,
appellant's continued detention was based on the oral consent given to Trooper Huerta to
search the vehicle. (24) Appellant does not cite to any authority and we find none providing
that oral consent given during a traffic stop expires when the purpose of the initial stop has
been completed. (25) Moreover, although Trooper Huerta testified that he asked appellant
to sign the consent to search form after he gave appellant the warning, "once the purpose
of the stop has been effectuated and the officer's suspicions allayed, he may still ask the
driver if he possesses any illegal contraband and then solicit his voluntary consent to
search the vehicle." (26) Therefore, the trial court properly concluded that because appellant
orally consented to the search, Trooper Huerta did not exceed the scope of the detention. 
We conclude that the trial court did not abuse its discretion by denying appellant's motion
to suppress. We overrule appellant's sole issue.


IV. Conclusion

 We affirm.



 






Do not publish. 

See Tex. R. App. P. 47.2(b).



Delivered and filed this

the 10th day of June, 2010.



 




1. See Tex. Health & Safety Code Ann. § 481.121 (a), (b)(6) (Vernon Supp. 2009).
2. At the suppression hearing, the trial court admitted into evidence a videotape recording of Trooper
Huerta's encounter with appellant. That recording was transcribed into the record by the court reporter.
3. See Tex. Health & Safety Code Ann. § 481.121 (a), (b)(6).
4. St. George v. State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).
5. Scardino v. State, 294 S.W.3d 401, 405 (Tex. App.-Corpus Christi 2009, no pet.); see Ford v. State,
158 S.W.3d 488, 493 (Tex. Crim. App. 2005).
6. St. George, 237 S.W.3d at 725.
7. Id.
8. Fonseca v. State, 881 S.W.2d 144, 149 (Tex. App.-Corpus Christi 1994, no pet.) (citing Rivera v.
State, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).
9. U.S. Const. amend IV; Tex Const. art. I § 9.
10. Whren v. United States, 517 U.S. 806, 809-10 (1996).
11. Terry v. Ohio, 392 U.S. 1, 19-20 (1968).
12. Id. at 21.
13. Davis v. State, 947 S.W.2d 240, 243, 244 (Tex. Crim. App. 1997) (en banc).
14. United States v. Karo, 468 U.S. 705, 717 (1984); Fonseca, 881 S.W.2d at 149.
15. Gutierrez v. State, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007); Reasor v. State, 12 S.W.3d 813,
818 (Tex. Crim. App. 2000).
16. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992) (en banc). 
17. Tex. Trans. Code Ann. § 545.062(a) (Vernon 1999).
18. We note that, on appeal, appellant does not dispute that he committed a traffic offense.
19. See Garcia, 827 S.W.2d at 944; see also Gagliano v. State, No. 13-02-00677-CR, 2004 Tex. App.
LEXIS 7830, at *8 (Tex. App.-Corpus Christi Aug. 27, 2004, no pet.) (mem. op., not designated for
publication) (concluding that officer had reasonable suspicion to justify a stop after the officer testified he
observed appellant follow another vehicle "too closely," appellant's vehicle was approximately one car length
behind another vehicle, and appellant would not have been able to avoid an accident with the other vehicle
if it had stopped unexpectedly).
20. See Gagliano, 2004 Tex. App. LEXIS 7830, at *8.
21. Appellant claimed that Trooper Huerta testified at the suppression hearing that he called Sergeant
Martinez to ask for further instructions. However, the record shows that Trooper Huerta never stated that he
asked Sergeant Martinez for further instruction and continuously testified that when he made the call to
Martinez he informed Martinez that he had appellant's consent. During cross-examination, appellant's counsel
asked, "And you asked [Sergeant Martinez] for further instructions," and Trooper Huerta replied, "Just told him
I had got the consent to search."
22. Harrison v. State, 7 S.W.3d 309, 311 (Tex. App-Houston [1st Dist.] 1999, pet. ref'd) ("[W]hen a
trained and certified narcotics dog alerts an officer to apparent evidence or contraband, probable cause exists
to search a vehicle.") (citing Josey v. State, 981 S.W.2d 831, 846 (Tex. App.-Houston [14th Dist.] 1998, pet.
ref'd)).
23. See Montoya v. State, 744 S.W.2d 15, 25 (Tex. Crim. App. 1987) ("A consent to search may be
oral and still be valid."), overruled on other grounds by Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996).
24. We note that in his brief appellant does not argue that his oral consent was invalid or involuntary,
and he does not cite to authority supporting such a conclusion. See Gagliano, 2004 Tex. App. LEXIS 7830,
at *9 (stating that the focus is on the voluntariness of the consent to search). Furthermore, Trooper Huerta
had not ask for consent to search the vehicle when appellant spontaneously offered his oral consent.
25. See Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (en banc) (stating that a
trial court abuses its discretion when it acts without reference to any guiding rules and principles, or if it acts
in an arbitrary or capricious manner).
26. Strauss v. State, 121 S.W.3d 486, 491 (Tex. App.-Waco 2003, pet. ref'd) (citing Spight v. State,
76 S.W.3d 761, 767-68 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (refusing to hold that it is unreasonable
per se for an officer to request a consent to search after the completion of a traffic stop and concluding that
the appellate court's focus must be on the voluntariness of the consent)); see also Gagliano, 2004 Tex. App.
LEXIS 7830, at *9 (concluding that officer legally detained the appellant even though the officer asked for the
appellant's consent to search her vehicle after giving her a warning because the appellant voluntarily
consented to the search).