ACCEPTED
13-15-00187-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/23/2015 4:01:20 PM
CECILE FOY GSANGER
CLERK

CAUSE NO. 13-15-00178-CR

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/23/2015 4:01:20 PM
CECILE FOY GSANGER
Clerk

THE STATE OF TEXAS,
Appellant

V.

ISMAEL SERDA,
Appellee

APPEAL FROM THE 28th DISTRICT COURT
NUECES COUNTY, TEXAS, IN TRIAL CAUSE NO. 13-CR-1027-A

BRIEF FOR APPELLEE ISMAEL SERDA

BY: TRAVIS BERRY

State Bar No. 24059194
travisberrylaw@gmail.com
P.O. Box 6333
Corpus Christi, Texas 78466
Telephone: (361) 673-5611
Facsimile:  (361) 442-2562
ATTORNEY FOR APPELLEE

ORAL ARGUMENT IS REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Reply point** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      **The trial court properly granted Appellee's motion to suppress**

**I.**     **Statement of Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**II.**    **Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**III.**   **The State's "cooperating officers" argument under** *Hoag v.* **State and** *Fonseca v. State* **is misguided as the officers failed to complete their cooperation and testify at the hearing on the motion to suppress where their hearsay statements were properly excluded.** . . . . . . . . . . . . . . . . . **6**

**IV.**   **No evidence was presented by the State to establish that Officer Castro had a reasonable suspicion to make a traffic stop** . . . . . . . . . . . . . . . . . **8**

**V**     **Appellee never consented to this encounter with a person unknown to him** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# INDEX OF AUTHORITIES

## CASES

*Allen v. State*, 13-13-00188-CR, 2014 WL 4402135, at *2-4
(Tex.App. - Corpus Christi, Sept 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . 15

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007) . . . . . . . . . . . . . . . . . 6

*Bland v. Texas Dep't of Pub. Safety*, No. 14-12-01057-CV, 2013 WL 3868447,
at *4 (Tex. App. - Houston [14th Dist] July 23, 2013, pet. denied) . . . . . . 11

*Busby v. State*, 253 S.W.3d 661 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . 18

*Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011) . . . . . . . . . . . . 11

*Dewalt v. State*, 307 S.W.3d 437 (Tex. App. - Austin 2010, pet. ref'd) . . . . . . . . 10

*Fonseca v. State*, 881 S.W.2d 144 (Tex. App. - Corpus Christi 1994, no pet.) 6-11

*Hoag v. State*, 728 S.W.2d 375 (Tex. Crim. App. 1987) . . . . . . . . . . . . . . . . . 6-11

*Hubbard v. State*, 133 S.W.3d 797 (Tex. App. - Texarkana 2004, pet. ref'd) . . . 10

*Jackson v. State*, 424 S.W.3d 140 (Tex. App.-Texarkana 2014, pet. ref'd) . . . . . 17

*Linney v. State*, 401 S.W.3d 764(Tex. App.- 14th Dist. 2013, pet. ref'd) . . . . . . 17

*Lucio v. State*, 351 S.W.3d 878 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . 17

*Praska v. State*, 557 S.W.2d 83 (Tex. Crim. App. 1977) . . . . . . . . . . . . . . . 10-12

*Spakes v. State*, 913 S.W.2d 597 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . 10

*State v. Dixon*, 206 S.W.3d 587 (Tex. Crim. App.2006) . . . . . . . . . . . . . . . . . 5, 6

*State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) . . . . . . . . . 5

*State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006 . . . . . . . . . . . . . . . . 6

*State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) . . . . . . . . . . . . . . . . 5

*State v. Woodard*, 341 S.W.3d 404 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . 5

*United States. v. Mendenhall*, 446 U.S. 544, 554 (1980) . . . . . . . . . . . . . . . 15-17

*Valtierra v. State*, 310 S.W.3d 442 (Tex. Crim. App. 2010) . . . . . . . . . . . . . . . 18

*Wade v. State*, 422 S.W.3d 661 (Tex. Crim. App. 2013) . . . . . . . . . . . . 13-15, 18

*Whitehead v. State*, 130 S.W.3d 866 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . 6

## RULES AND STATUTES

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-17

Texas Penal Code §9.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Tex. R. App. P. 38.1(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## CAUSE NO. 13-15-00178-CR

| | | |
|---|---|---|
| **STATE OF TEXAS** | * | **IN THE COURT OF APPEALS** |
| | * | |
| **VS.** | * | **THIRTEENTH DISTRICT** |
| | * | |
| **ISMAEL CERDA** | * | **STATE OF TEXAS** |

## BRIEF FOR APPELLEE

**TO THE HONORABLE COURT OF APPEALS:**

## SUMMARY OF THE ARGUMENT

The State failed to bring any witnesses to the traffic violations alleged to have been committed by Appellee. The State attempted to bring statements from a DPS officer and a police dispatch officer via hearsay rather than presenting those witnesses in court. The trial court properly sustained defense objections to such hearsay.

The only witness to testify about the traffic stop, Officer Castro, never witnessed any traffic violations herself and stated she only made the traffic stop at the order of the dispatch officer.

Without any evidence that a traffic violation occurred, the trial court held that no reasonable suspicion existed to stop Appellee's vehicle. The trial court properly granted Appellee's motion to suppress all evidence seized in this traffic stop. The State's issues on appeal should be overruled.

1

## ARGUMENT

## REPLY POINT:

**The trial court properly granted Appellee's motion to suppress**

The State complains on appeal that the trial court erred by failing to consider evidence and witnesses it did not produce or present at the hearing.

### I. Statement of Facts

The Appellee was being followed from Portland, Texas, into Corpus Christi, Texas, by an unknown, unmarked pick-up truck. (RR2 - 39; Supp. CR17 - Finding No. 2) Appellee testified that the unmarked pick-up truck was not a police vehicle, that he felt he was being "chased" by an unknown person, and that the pick-up kept increasing its speed during this pursuit to the point of exceeding the speed limit. (RR2  39-41, 45) Appellee testified that he was scared and frightened as he felt that this unknown person chasing him wanted to harm him. (RR2 - 42, 46) After hearing evidence, the trial court found that this speeding occurred because:

> "Defendant did not know that he was being followed by any police officers or agents or any authorities; he thought he was being chased by an unknown person."[1]  (Supp. CR17 - Finding No. 3)

The State never presented its witness to this alleged incident, nor did it

---

[1] Officer Castro testified that Appellee thought he was being pursued by this pick-up truck (RR2 - 18, 26)

present any police reports from that witness. The trial court found as such. (Supp.

CR17 - Finding No. 5) The State twice desired findings on excluded evidence.

(Supp. CR 10, 19; RR2 - 7 lines 2-8, lines 14-16; RR2 - 9,10, RR2 - 50)

In its Order denying the State's request for additional findings of fact, the

trial court held that:

> "The State denied the Court the opportunity to hear the full examination of this material witness to this stop. There was no reason given by the State of his unavailability nor did the State express the need for his testimony at the time of the hearing as the record shows." (Supp. CR25)

Due to the State's failure to bring its material witness, the trial court was

only presented evidence from the State's sole witness - Officer Castro. Officer

Castro admittedly made a traffic stop of Appellee's vehicle without observing any

traffic violations and corroborated that there was no law enforcement indicia on

the vehicle pursuing Appellee:

Defense: At any time while you were on the freeway or before the stop, did you see the Defendant driving recklessly?

Castro: No.

Defense: Did you see him speeding?

Castro: No.

Defense: Did you see him almost have a collision?

Castro: No.

Defense: Did Eric Walters have any kind of emergency – police emergency lights on this car?

Castro: No, sir.

Defense: He didn't have any flashing lights inside of his grill?

Castro: I don't recall.

Defense: So basically you can't say that you stopped the defendant for a traffic violation because you didn't, is that correct?

Castro: Correct. (RR2 - 15, 16)

Officer Castro stopped Appellee's vehicle only upon information from dispatch[2], not on any personal observations in corroboration of alleged traffic violations. (RR2 - 16, 17; RR2 - 26, 27; Supp. CR. 18 - Finding No. 9) Officer Castro agreed with the defense that there was "no basis for stopping him" and when Appellee was asked to exit the vehicle and placed under arrest, no sobriety tests had been performed. (RR2 - 26, lines 10-19) The trial court was also shown Officer Castro's dashboard camera video of the stop wherein no traffic violations were observed. (RR2 - 47, lines 21-25)

Upon the evidence presented, the trial court granted Appellee's motion to suppress and made the conclusions that: 1.) No evidence was presented of Agent

---

[2] "I mean, based upon what dispatch was telling me, I just detained him."

4

Walters' observations; 2.) The officer who made the traffic stop observed no basis the stop; and 3.) The traffic stop served no community care-taking function. (Supp. CR. 18)

## II. Standard of Review

When reviewing the ruling on a suppression motion, regardless of whether the judge granted or denied the motion, appellate courts view the evidence in the light most favorable to the ruling. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)[3]The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *Id.*

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, such that he may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) We will uphold the trial judge's ruling if it is reasonably grounded in the record and correct on any theory of law applicable to the case. *Valtierra v. State*, 310 S.W.3d 442, 447-448 (Tex. Crim. App. 2010); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App.2006).

If the trial judge makes express findings of fact, we view the evidence in the

---

[3] Citing *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)

5

light most favorable to his ruling and determine whether the evidence supports these factual findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)

### III. The State's "cooperating officers" argument under *Hoag v.* State and *Fonseca v. State* is misguided as the officers failed to complete their cooperation and testify at the hearing on the motion to suppress where their hearsay statements were properly excluded.

"An appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling."[4] "This ensures that the record on appeal accurately reflects all of the evidence that was seen by, used by, or considered by the trial judge at the time [s]he made a ruling."[5]

At the hearing on Appellee's motion, the State failed to present any witness to alleged traffic violations committed by Appellee. The State attempted to introduce observations and statements from witnesses *in absentia*. At each attempt by the State to enter evidence via hearsay, the trial court denied its admittance. (RR2 - 7, lines 2-8 & lines 14-16; RR2 - 9,10; RR2 - 50)

Although Appellee admitted to speeding at this hearing, the traffic stop occurred before the hearing. Appellee's admission of speeding (later discussed

---

[4] *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004).

[5] *Amador v. State*, 221 S.W.3d 666, 677 (Tex. Crim. App. 2007)

6

under the Law of Necessity *infra.*) at the hearing does not create a reasonable suspicion retroactively. Officer Castro testified that, before making the stop, she had no direct knowledge that a traffic violation had occurred as she had not witnessed any traffic violations. In addition to the DPS Agent the State failed to produce, the State also failed to present the police dispatch officer who allegedly made the call to Officer Castro to make a traffic stop.

### *Hoag & Fonseca*

Upon reading of both *Hoag v. State*[6] and *Fonseca v. State*[7], the State's argument that the trial court should have allowed statements from the DPS officer and the dispatch officer into evidence because they were "cooperating officers" during the arrest is misguided. It is true that before and up to Appellee's arrest all law enforcement involved were cooperating. This is the first part to this "cooperation." The second part of this "cooperation" is the live testimony of the "cooprerating officers" in Court.

In both *Hoag* and *Fonseca*, the State had multiple officers involved in the arrest who all cooperated in the arrest. In addition to their cooperation at arrest was their cooperation at the defendant's hearing on its motion to suppress.

---

[6] 728 S.W.2d 375, 380 (Tex. Crim. App. 1987)

[7] 881 S.W. 2d 144, 150 (Tex. App. - Corpus Christi 1994, no pet.)

In both *Hoag* and *Fonseca,* the cooperating officer's evidence was admitted because they were present in court at the hearing on the defendant's motion to suppress and made live testimony about what they observed during the arrest. This did not occur in the instant case and the fact that these officers may have "cooperated" in Appellee's arrest does not exempt their appearance at the suppression hearing.

Without the testimony of these "cooperating officers" or any police reports from these "cooperating officers", the trial court was not presented with any evidence besides Officer Castro's testimony; testimony that clearly stated that the officer did not have any reasonable suspicions of her own to make a traffic stop of Appellee's vehicle because she observed no traffic violations.

The State's first argument that the trial court should have considered the collective knowledge of the cooperating officers to determine that reasonable suspicion existed fails as it is based only in the trial court allowing inadmissable hearsay evidence.

## IV. No evidence was presented by the State to establish that Officer Castro had a reasonable suspicion to make a traffic stop.

The trial court found that the Appellee was speeding for an acceptable reason, because the "Defendant did not know that he was being followed by any

8

police officers or agents or any authorities; he thought he was being chased by an unknown person. Defendant accelerated and decelerated his vehicle at different speeds in an attempt to get away from the unknown vehicle." (Supp. CR 17 - Finding No's 3 & 4) This finding did not exculpate the Appellee from such action, rather the trial court found it justified under the facts of this harrowing unmarked police pursuit.

Under the law of necessity[8], Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

The necessity defense applies to the violation of speeding.[9]  The trial court did not cite the Penal Code in its findings but it is the law under which the court's finding is grounded. (Supp. CR17 - Finding No. 4)   Tex. Pen Code §9.22(1) and

---

[8] Texas Penal Code §9.22

[9] See *Spakes v. State*, 913 S.W.2d 597, 598 (Tex. Crim. App. 1996) "The plain language codifying the necessity defense evidences a legislative intent that the defense apply to all offenses unless the legislature has specifically excluded it from them"

9

*Dewalt v. State,*[10] "requires the defendant to first bring forward evidence of a specific imminent harm." Also, *Hubbard v. State*[11] holds that "a defendant must admit the conduct charged (speeding) and then offer evidence justifying the conduct. "

The defense brought forward such evidence of specific imminent harm from this unknown pursuer (RR2 39-43, 45 & most specifically at RR2 - 42), the Appellee admitted to such speeding (CR1 - 30 ¶2, RR2 - 45, 46), the Appellee testified during the State's cross that he was speeding, "To get away from the vehicle that was chasing me" (RR2 - 46, lines 1-3) and the trial court's findings were grounded in the record.

Nonetheless, the State quotes *Praska v. State*[12] to argue that any defense Appellee might have to any traffic infractions would not negate an officers reasonable suspicion to make a detention. As was the case in *Hoag* and *Fonseca*, the officer in *Praska* that had a reasonable suspicion also testified at the hearing on a defense motion to suppress. This live testimony about what these officers personally observed is why their information was taken into evidence by their

---

[10] 307 S.W.3d 437, 454 (Tex. App. - Austin 2010, pet. ref'd)

[11] 133 S.W.3d 797, 801-802 (Tex. App. - Texarkana 2004, pet. ref'd)

[12] 557 S.W.2d 83, 85-86 (Tex. Crim. App. 1977)

respective trial courts. Had those same officer's failed to appear to testify in *Hoag*, *Fonseca*, and *Praska*, Appellee argues their observations offered as hearsay would not have been allowed. (This is assuming counsel makes the hearsay objection as did defense counsel in the instant case).

The observations and statements of the State's "cooperating officers" were properly excluded. Officer Castro's observations at the inception of her arrival behind Appellee's vehicle saw no traffic violations. Throughout her tracking of Appellee's vehicle, she observed no traffic violations. There was nothing the State had in its possession or had secured through a witness to show the trial court that Officer Castro had a reasonable suspicion to make a traffic stop.

### The "paranoid speeding drunk" defense

On this point, the State has offered a quote from *Derichsweiler v. State*[13]. Although similar in certain respects, *Derichsweiler* is not guiding caselaw in this appeal as everything the officer in *Derichsweiler* observed to create a reasonable suspicion to make a stop was also testified to by that officer in court. The same again goes for the State's other cited case law in *Bland v. Texas Dep't of Pub. Safety*[14] and *Praska* at 85-86.

---

[13] 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)

[14] No. 14-12-01057-CV, 2013 WL 3868447, at *4 (Tex. App. - Houston [14th Dist] July 23, 2013, pet. denied)

11

Without any evidence to offer the trial court that Appellee was a "paranoid speeding drunk" BEFORE Officer Castro arrived and observed zero traffic violations, i.e. live testimony from the DPS Agent, there exists no evidence of such for the trial court to consider. It is the State's burden to prove its assertions which in this case was to produce its witness to the alleged traffic violations.

## V.  Appellee never consented to this encounter with a person unknown to him

Appellee was believably in fear for his own safety when pursued at increasing and decreasing rates of speed by a foreign pick-up truck driven by an unknown individual. The trial court made a finding to support Appellee's contention. (Supp CR17 - Finding No's 3 & 4) Appellee would argue that human beings with any sense of self-preservation do not subject themselves to that which creates fear and apprehension. This is why Appellee refused to pull over earlier in this pursuit, that the vehicle following him was not law enforcement:

Defense:    Okay. So why didn't you pull over?

Appellee:    It wasn't a -- it was a pickup. I felt like it was some guy chasing me.  (RR2 - 41)

Later in his testimony, Appellee stated that he feared that this person was out to harm him, that he "was scared." (RR2 - 42, lines 9-11) This fear and apprehension fueled Appellee's reason for pulling over, that this person was still

12

"on my tail" and Appellee needed to determine whether his safety was in jeopardy. (RR2 - 43, lines 4-9)

The State has attached the holding of *Wade v. State*[15] into its brief to argue that this was a "police - citizen interaction" that was a "consensual encounter" between this DPS Agent and Appellee which "does not implicate the Fourth Amendment". The record clearly shows that the interaction between the DPS Agent and Appellee was initiated by the DPS Agent and continued for a considerable distance during which Appellee was in fear and concern for his own safety. The Appellee did not consent to this and the Fourth Amendment applies in this situation.

The State is misguided in its attempt to bridge a nexus between the facts of the instant case and the holding in *Wade*. The consensual encounter in *Wade* dealt with a defendant sitting stationary in his work van near the public boat ramp of Lake Waco in China Spring, Texas. A Texas game warden docked his boat to investigate this work van parked by the boat ramp as it trailered a work trailer, not a boat trailer and no fishing equipment or implements were present.

Defendant *Wade* on his own volition, rolled his window down to engage the officer in conversation. The officer was just assuring that the "occupant was okay"

---

[15] 422 S.W.3d 661, 667-668 (Tex. Crim. App. 2013)

13

wherein the officer then became suspicious of *Wade's* behavior. The officer testified that *Wade* presented "unordinary nervousness", that his story of why he was parked there changed, and *Wade* gave "strange responses" to his questions. This suspicion led to a search of *Wade's* van which discovered drugs.

The "police - citizen interaction" seen in *Wade* is nothing like the facts of this case. A Texas Game Warden walking in uniform from a conspicuously marked game warden boat is a clear sign of law enforcement authority. *Wade* voluntarily rolled his window down to engage this known law enforcement officer. Appellee was not a part of such a clearly marked and calm scenario as was described in *Wade*.

Most interesting to note about *Wade* is the fact that in this "consensual encounter", the Texas Court of Criminal Appeals ruled in the defendant's favor. It overruled the trial court's denial of *Wade's* motion to suppress and reversed the Court of Appeals decision affirming the trial court's denial.[16] Though Appellee's interaction with the DPS Agent was clearly not consensual, even if it was, *Wade* further reinforces Appellee's rights under the Fourth Amendment to be "secure in

---

[16] "Neither nervousness nor a refusal to cooperate with an officer during a consensual encounter are sufficient by themselves to constitute reasonable suspicion. Nor were they sufficient in combination with appellant's statements about his reasons for coming to the boat launch to provide the basis for the detention and frisk. Appellant's statement about the pipe in his truck was derived from the warden's illegal detention and was "fruit of the poisonous tree," and therefore that statement could not provide probable cause for searching appellant's truck." *Id.* 676

his person".

The State has also quoted an unpublished case that discussed *Wade - Allen v. State*[17]. This case is not pertinent to determine whether or not Appellee's encounter with the DPS Agent was consensual as the interaction between police and the defendant in *Allen* was not consensual. The officer in the *Allen* case followed the defendant's vehicle without the driver's consent until he viewed a traffic violation and made a valid traffic stop. As has been seen in all of the cases cited by the State, the officers in both *Wade* and *Allen* who observed the activity that led to reasonable suspicion also testified live in court.

Lastly, the State in its quote of *Wade*, it has referenced the "*Mendenhall* test"[18] for determining whether a seizure has occurred under the Fourth Amendment. The question in *Mendenhall* was whether, in light of the surrounding circumstances, "a reasonable person would believe he was free to leave."

The facts of *Mendenhall* are not similar to the instant case in any respect and the test is not applicable to support the State's argument. Sylvia Mendenhall was seen walking through the Detroit Airport and federal DEA Agents working at the Airport found her movements to be highly suspicious. The agents approached

[17] 13-13-00188-CR, 2014 WL 4402135, at *2-4 (Tex.App. - Corpus Christi, Sept 4, 2014)

[18] *United States. v. Mendenhall*, 446 U.S. 544, 554 (1980)

15

Ms. Mendenhall, identified themselves as federal Drug Enforcement Agency agents, asked her a series of questions about her travels, and asked her if she would accompany them to their office at the Detroit Airport. Ms. Mendenhall voluntarily joined the agents and went to the office.

At the DEA office, the agents asked to inspect Ms. Mendenhall's handbag and told her that she could decline to allow such search. Ms. Mendenhall did not assert any objection to the search and allowed it. That search revealed nothing however the next search of her person, by a female officer after gaining the same un-objected to consent, revealed drugs. Since Ms. Mendenhall was free to leave during this questioning and voluntarily stayed, there was no search and seizure under the Fourth Amendment. Justice Potter Stewart's opinion concluded:

> "Respondent's Fourth Amendment rights were not violated when she went with the agents from the concourse to the DEA office. Whether her consent to accompany the agents was in fact voluntary or was the product of duress or coercion is to be determined by the totality of all the circumstances. Under this test, the evidence -- including evidence that respondent was not told that she had to go to the office, but was simply asked if she would accompany the officers, and that there were neither threats nor any show of force -- was plainly adequate to support the District Court's finding that respondent voluntarily consented to accompany the officers." *Id.* at

The *Mendenhall* case about voluntariness and consent under the Fourth Amendment does not apply here. First, Appellee was never appraised of the law

enforcement status of his pursuer. Second, the interaction between this DPS agent and Appellee was never consensual. Third, Appellee was never given an opportunity to decline further search and pursuit as the pursuit began while in vehicle transit. Lastly under *Mendenhall*, the totality of the circumstances clearly show that Appellee pulled over under duress. For these reasons, the *Mendenhall* test provides no assistance to Fourth Amendment analysis.

Due to the lack of consent to the interaction between the DPS Agent and Appellee, the State's third issue should be overruled.

## Failure to Adequately Brief the Issue

Further, the Appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). When the appellant's brief contains no argument or citation to any authority that might support an argument, the point of error is inadequately briefed and presents nothing for review. *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); see also *Jackson v. State*, 424 S.W.3d 140, 155 (Tex. App.—Texarkana 2014, pet. ref'd); *Linney v. State*, 401 S.W.3d 764, 783 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).

The reviewing court has no obligation to construct and compose a party's issues, facts, and arguments with appropriate citations to authorities and to the

17

record. *Lucio*, 351 S.W.3d at 896; *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008).

The State has cited no cases at all to flesh out the nature of its' argument that the "police-citizen interaction" between the DPS Agent and Appellee was a consensual encounter. The State has made blanket references to small portions of *Wade*, *Allen*, and *Mendenhall* which do not apply to this case. The State has failed to properly brief its third issue and does not make a complete argument to show any error in the trial court's ruling.

For this additional reason, the State's third issue should be overruled.

## CONCLUSION

Faced with this evidence, the trial court could only reach the legal conclusion that the defense's motion to suppress should be granted. The trial court's grant of Appellee's motion was grounded in the record and was correct under applicable theories of law.[19]

## PRAYER

For the foregoing reasons, the Appellee respectfully requests that the judgement of the trial court be affirmed.

---

[19] *Valtierra v. State*, 310 S.W.3d 442, 447-448 (Tex. Crim. App. 2010)

18

Respectfully submitted,


/s/ *Travis Berry*

Travis Berry
Texas Bar No. 24059194
P.O. Box 6333
Corpus Christi, Texas 78466
T: (361) 673-5611; F: (361) 442-2562
travisberrylaw@gmail.com

ATTORNEY FOR APPELLEE

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of June 2015, a true and correct copy of the Appellant's Brief has been sent via e-mail to A. Cliff Gordon, the attorney for the State at the Nueces County District Attorney's Office, 901 Leopard - Rm. 206, Corpus Christi, Texas 78401.

/s/ *Travis Berry*
Travis Berry

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations announced in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure.

1. The undersigned certifies that the Appellee's Brief contains no more than **3,968** words in proportionately spaced typeface, an amount of words within the limits set forth in Rule 9.4(i)(2)(B)

2. The brief has been prepared in proportionately spaced typeface using WordPerfect 12 in 14 pt. Times New Roman. Footnotes have been used and are all accounted for in the above word count.

3. The undersigned acknowledges a material misrepresentation in completing this certificate, or circumvention of the type-volume limits states in Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure, may result in the Court striking the brief.

/s/ *Travis Berry*
Travis Berry